IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

J & J SPORTS PRODUCTIONS, INC.,     :
                                    :     CIVIL ACTION
     Plaintiff,                     :     NO. 16-2725
                                    :
          v.                        :
                                    :
CHARLES A. HACKETT, et al.,         :
                                    :
     Defendants.                    :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          September 6, 2017

          Plaintiff J & J Sports Productions, Inc. ("Plaintiff"
or "J & J") brings this action against Defendants All Star
Sports Bar & Grille, Inc. ("All Star Sports Bar") and individual
Charles A. Hackett ("Hackett"), alleging commercial piracy of a
certain boxing match between Miguel Cotto and Sergio Martinez,
in violation of the Communications Act of 1934. Plaintiff has
moved for summary judgment, and Defendants have responded in
partial opposition. For the reasons that follow, the Court will
grant Plaintiff's motion and enter judgment in favor of
Plaintiff and against both Defendants.


I.   BACKGROUND

          Plaintiff is a California corporation that paid for
exclusive nationwide commercial distribution rights to a boxing

match between Miguel Cotto and Sergio Martinez that took place on June 7, 2014 (the "Program"). Compl. ¶ 16. Plaintiff then sublicensed these rights to various commercial entities across North America. Id. ¶ 17.

Plaintiff alleges that it did not sublicense rights to the Program to the Hotel Sports Bar & Grille ("Hotel Sports Bar"), which is located at 541 West Lancaster Avenue in Downingtown, Pennsylvania, and owned and operated by Defendant All Star Sports Bar. Id. ¶¶ 7, 19. According to Plaintiff, Defendants unlawfully intercepted the Program and showed the live broadcast to patrons at Hotel Sports Bar without having obtained the proper license to do so. Id. ¶ 19.

Plaintiff filed its complaint in this case on June 3, 2016. ECF No. 1. Following the Court's denial of Defendant Hackett's motion to dismiss, see ECF No. 26, the parties engaged in discovery, and Plaintiff moved for summary judgment against both Defendants on May 10, 2017, ECF No. 28. Attached to the motion is, among other items, an affidavit signed by Daniel Szlezak, the private investigator who visited Hotel Sports Bar during the Program broadcast on June 7, 2014. ECF No. 28-5.

Defendants responded together in partial opposition to Plaintiff's motion for summary judgment, ECF No. 29, and Plaintiff replied, ECF No. 36. The motion is now ripe for disposition.

## II.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, but meeting this obligation shifts the burden to the nonmoving party, who

then must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

## III. DISCUSSION

Section 605 of the Communications Act of 1934 "provides a civil remedy for the unauthorized use or publication of various wire or radio communications, including encrypted satellite broadcasts." DIRECTV, Inc. v. Seijas, 508 F.3d 123, 125 (3d Cir. 2007) (quoting DIRECTV, Inc. v. Pepe, 431 F.3d 162, 164 (3d Cir. 2005)). Specifically, this statutory provision prohibits the unauthorized reception of "any interstate or foreign communication by radio" and the use of any such communication "for his own benefit or the benefit of another not entitled thereto." 47 U.S.C. § 605(a).[1]

---

[1]     Although Plaintiff initially sought relief under both 47 U.S.C. § 553 and 47 U.S.C. § 605, it has moved for summary judgment only on its § 605 claim. Both of these statutory sections prohibit the unauthorized interception and exhibition of communications, and within the Third Circuit, plaintiffs may seek summary judgment on only one of the two. See TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 207 (3d Cir. 2001) (explaining that "§ 605 encompasses the interception of satellite transmissions 'to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system,' and no more. . . . Once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605." (citations omitted)).

Under certain circumstances, an individual may be held vicariously liable for a § 605 violation committed by his or her co-defendant corporation. Courts within this district have articulated the following requirements for imposing this type of vicarious liability:

> An individual may be liable if he "(1) has the right and ability to supervise the violative activity, although he need not actually be supervising, because he need not know of the violative activity, and (2) has a direct financial interest in the violation, i.e., financial benefits, even if not proportional or precisely calculable, that directly flow from the violative activity."

J & J Sports Prods., Inc. v. Cruz, No. 14-2496, 2015 WL 2376290, at *4 (E.D. Pa. May 18, 2015) (quoting Joe Hands Promotions, Inc. v. Yakubets, 3 F. Supp. 3d 261, 296 (E.D. Pa. 2014)).

Once liability has been found, Section 605 provides that an aggrieved party may, at its discretion, recover either actual or statutory damages. See 47 U.S.C. § 605(e)(3)(C). "Because '[t]here are no mens rea or scienter elements for a non-willful violation of 47 U.S.C. § 605(a),' Defendants are strictly liable for actual or statutory damages." Cruz, 2015 WL 2376290, at *5 (quoting J & J Sports Prods., Inc. v. De La Cerda, No. 11–1896, 2013 WL 5670877, at *5 (E.D. Cal. Oct. 16, 2013)).

Neither the Supreme Court nor the Third Circuit has established a formula for calculating damages under 47 U.S.C.

§ 605. Following a comprehensive analysis of the goals served by the statutory damages provision, Judge Pratter explained in Yakubets that "the aim of statutory damages is to estimate actual damages" and recommended that this estimate be "a conservative figure that does not simply allow circumvention of the actual damages provision's proof requirement." Yakubets, 3. F. Supp. 3d at 280. Judge Pratter outlined the following factors for consideration in reaching this estimate:

> (1) the size of the establishment; (2) the number of patrons at the establishment, taken, to the extent possible, as the number of patrons present because of the interception (to which evidence of advertising to attract customers may be relevant); (3) the number, size, and position of screens displaying the broadcast (a factor to be considered in conjunction with (1) and (2) as an indication of who might be there specifically to watch); (4) any cover charge levied because of the interception; (5) what additional money patrons spent because of the interception (i.e., the amounts spent by those who otherwise would not have come, plus any other premiums or greater spending by those who would have come anyway); and (6) any such other factors as may appear relevant in the case before the court.

Id. Other courts within this district have subsequently endorsed this analysis. See, e.g., J & J Sports Prods., Inc. v. Cruz, No. 14-2496, 2015 WL 2376051, at *4 (E.D. Pa. May 18, 2015) (citing Yakubets to support the conclusion that "it appears Congress did not intend that a deterrence factor be part of the calculation for statutory damages. . . . [A]ccording to the plain language of the statute, statutory damages are merely an alternative to

actual damages."); <u>J & J Sports Prods., Inc. v. Chauca</u>, No. 14-6891, 2015 WL 7568389, at *7 (E.D. Pa. Nov. 25, 2015) (agreeing that "deterrence is not a proper consideration for calculating statutory damages").

Additionally, "enhanced" actual or statutory damages may be available under 47 U.S.C. § 605(e)(3)(C)(ii), which provides in full as follows:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage of private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by any amount of not more than $100,000 for each violation of [§ 605(a)].

47 U.S.C. § 605(e)(3)(C)(ii). Though neither the Supreme Court nor the Third Circuit has interpreted the term "willfully" as used in this provision, Judge Pratter concluded persuasively in <u>Yakubets</u> that "willfulness for purposes of § 553(c)(3)(B)'s enhanced damages requires both the defendant's intentional signal interception as well as knowledge of or reckless disregard as to the unlawfulness of its signal interception." <u>Yakubets</u>, 3 F. Supp. 3d at 284. In accord with this standard, "courts have repeatedly found that the mere act of piracy itself evidences intent because in order for a closed circuit broadcast to be intercepted, the interceptor has to engage in some deliberate act; it is virtually impossible to do so accidentally." <u>J & J Sports Prods., Inc. v. Martinez</u>, No. 13-

6885, 2014 WL 5410199, at *8 (E.D. Pa. Oct. 23, 2014).
Similarly, the act of showing the broadcast in a bar "allows for
an inference that the piracy was done for commercial or
financial gain." Id. at *9.

   To measure enhanced damages, courts often employ
multifactor tests that "balance '[t]he need for deterrence . . .
against the harm to the defendant's business if significant
damages are assessed.'" Yakubets, 3. F. Supp. 3d at 289 (quoting
J & J Sports Prods., Inc. v. Guzman, No. 12-525, 2012 WL
3108831, at *1 (D. Ariz. July 31, 2012)); see also, e.g.,
Martinez, 2014 WL 5410199, at *8 (recognizing that "the
willfulness of [the] [d]efendants' violation . . . strongly
favors an award of at least some enhanced damages," but also
that too large a damages award would "cause extreme hardship to
a small business and would result in a gross overcompensation of
[the] [p]laintiff despite its failure to produce any evidence of
[the] [d]efendants' commercial advantage or gain"); J & J Sports
Prods., Inc. v. Wing Bistro LLC, No. 13-31, 2013 WL 6834645, at
*9 (E.D. Va. Dec. 19, 2013) (imposing "a milder fine" under
§ 605(e)(3)(C)(ii) because the illegal broadcast, though
willful, was exhibited to only fourteen patrons, and the amount
of actual damages that could be calculated was only the unpaid
license fee of $1,200).

Here, Defendant All Star Sports admits that "it did, unintentionally, display the Program using a residential, as opposed to a commercial license." Defs.' Resp. Mot. Summ. J. at 3, ECF No. 29. Further, Defendant All Star Sports Bar concedes that "a nominal judgment should be entered against it on the Section 605 claim that [Plaintiff] is pursuing." Id. Given this admission, and seeing no evidence on the record to the contrary, the Court finds Defendant All Star Sports liable for a single violation of 47 U.S.C. § 605(a).

Despite his corporate co-defendant's admission of liability, Defendant Hackett denies liability on the basis that he is "an individual that was not present on the night of the violation, had no ability to prevent the violation, and has received no benefit as a result of the violation." Id. at 6-7. Defendant Hackett maintains that he has paid for commercial licenses to access Plaintiff's programming in the past, and, "[h]ad Hackett actually exercised control on the day of the violation, he would have known to use his account with [Plaintiff] to purchase a commercial license, and this dispute would have been avoided." Id. at 8; see also Defs.' Counterstatement of Material Facts ¶ 9, ECF No. 29 ("It is admitted that All Star's manager, who was not aware of the distinction between personal and commercial licensing, used All Star's staff account to purchase access to the Program and

broadcast it to the bar. Hackett, however, was not present at the time, and did not authorize the purchase, or, indeed, know of it, until long afterward."). In other words, Defendant Hackett argues, "it is precisely [his] lack of control over All Star that is the genesis of this case." Id.

His minimal personal involvement notwithstanding, the Court finds Defendant Hackett vicariously liable for Defendant All Star Sports Bar's § 605 violation. Defendant Hackett admits that he is one of three owners and shareholders of All Star Sports Bar. See Defs.' Resp. Mot. Summ. J. at 7. He further admits that, "together with his partners, [he] has purchased an account with [Plaintiff] and has paid for commercial licenses to access [Plaintiff]'s programming in the past." Id. at 7-8. Although he denies exercising control on the specific night in question, "he need not actually be supervising" nor "know of the violative activity" in order to be held liable. See Cruz, 2015 WL 2376290 at *4. Moreover, because Defendant Hackett, by virtue of his undisputed role in the company, "had a direct financial interest in the conduct that violated § 605," he may be held vicariously liable for the acts of the manager on duty at the bar that evening. See id.; see also Yakubets, 3 F. Supp. 3d at 296 ("If . . . [an officer's] compensation increases with the establishment's profits--i.e., from greater profits the night the [program in question] was illegally intercepted and

exhibited at [the establishment in question]--the ['direct financial benefit'] requirement could be met.").

Having found both Defendants liable to Plaintiff for the June 7, 2014, broadcast of the Program at Hotel Sports Bar, the Court now turns to the calculation of damages. Plaintiff in this case "elects to receive statutory damages." Mem. Supporting Mot. Summ. J. at 9, ECF No. 28-1. In Plaintiff's view, awards of $5,000 in statutory damages and $20,000 in enhanced statutory damages would be "appropriate to satisfy the dual purposes of compensating Plaintiff and acting as a deterrent against future acts of piracy by both these Defendants and others." Id.

Defendants respond that, "under Section 605(e)(3)(C)(i), [Plaintiff] should recover $800 in actual damages or $1,000 in statutory damages." Defs.' Resp. Mot. Summ. J. at 5.  Based on an argument that "[t]he 'violation' here [was] not an intentional attempt to avoid payment but, rather, an unintentional error by a novice manager," Defendants argue that "the Court should award not the statutory minimum of $1,000 but, instead, J&J's actual damages of $800 pursuant to subsection § 605(e)(3)(C)(1)." Id. at 6.

Defendants contend that the price of a commercial license for the Program was $800. See Defs.' Resp. Mot. Summ. J. at 5. Further, they claim that they "did not charge for access to the Program by cover charge, and made substantially no

profits on the night of the Program." Id. Plaintiff does not dispute these assertions.

By way of its private investigator's signed affidavit, Plaintiff informs the Court that the capacity of Hotel Sports Bar is "approximately 90 people." ECF No. 28-5. The investigator's affidavit also indicates that separate headcounts, conducted over a period of about twenty minutes, "were 12, 11 and 16."[2] Id. The investigator "didn't pay a cover charge" to enter the establishment, and he observed the Program playing on seven of nine visible televisions. Id.

Given these facts, the Court will impose the minimum statutory damages award of $1,000. This amount is greater than the $800 price of the commercial license for the Program that Defendants rightfully should have purchased. Aside from this figure, Plaintiff has offered no evidence as to what, if any, profits Defendants earned on the night of the Program. The Court therefore declines to add anything further to the estimate of actual damages guiding this "conservative" award of statutory damages. See Yakubets, 3. F. Supp. 3d at 280.

---

[2]      The investigator claims in his affidavit that he "counted the number of patrons two separate times," but also that "[t]he headed counts were 12, 11 and 16." ECF No. 28-5. This discrepancy, though curious, is immaterial to the Court's resolution of this case.

Regarding enhanced damages, the Court finds that Defendant All Star Sports Bar's violation was "willful" within the meaning of § 605(e)(3)(C)(ii) because the evidence supports both "intentional signal interception as well as knowledge of or reckless disregard as to the unlawfulness of its signal interception." Yakubets, 3 F. Supp. 3d at 284; see also Martinez, 2014 WL 5410199, at *9 ("Defendants' showing of the Program in a bar allows for an inference that the piracy was done for commercial or financial gain."). Defendant All Star Sports Bar has admitted that it did not pay a commercial licensing fee to Plaintiff before broadcasting the program, and further that it was aware that it needed to have paid a commercial licensing fee to Plaintiff before broadcasting the Program. See Defs.' Resp. Mot. Summ. J. at 3. Defendant All Star Sports Bar has also admitted that information was advertised on Hotel Sports Bar's public Facebook page regarding the broadcast of the Program. See Defs.' Counterstatement of Material Facts ¶ 17, ECF No. 29.

Considering the circumstances establishing Defendant All Star Sports Bar's willful violation of § 605, the Court concludes that a total enhanced damages amount of $500 awarded in favor of Plaintiff and against Defendant All Star Sports Bar appropriately balances the need for deterrence against potential harm to Defendant All Star Sports Bar's business from the

imposition of significant damages. Plaintiff's own investigator
reported that there was no cover charge to view the Program
broadcast at Hotel Sports Bar, and his highest headcount
numbered only sixteen. Though several courts within this
district have utilized a three-times multiplier of statutory or
actual damages to calculate enhanced damages,[3] this Court finds,
like the court in <u>Martinez</u>, that a treble damages award "would
cause extreme hardship to a small business and would result in a
gross overcompensation of Plaintiff despite its failure to
produce any evidence of Defendants' commercial advantage or
gain." 2014 WL 5410199, at *9.

The Court declines to impose joint liability on
Defendant Hackett for any enhanced damages. Enhanced damages
"are not true damages, but rather penalties aimed to deter and

---

[3]     These courts generally have held that "a simple
multiplier best achieves the dual goals of general and specific
deterrence" by "vindicat[ing] Congress's interest in generally
deterring theft of [satellite] services . . . as well as
address[ing] [the statutory] 'commercial advantage of private
financial gain' prerequisite by forcing the defendant to
disgorge a multiple of its profits (and thus also specifically
deters)." <u>Chauca</u>, 2015 WL 7568389, at *9 (quoting <u>Cruz</u>, 2015 WL
2376051, at *7)). "Courts applying multipliers have generally
awarded anywhere from three to six times the award for enhanced
damages," <u>Cruz</u>, 2015 WL 2376051, at *7 (citing <u>Yakubets</u>, 3 F.
Supp. 3d at 290-91), and the primary factor to consider in
choosing the appropriate multiplier is "whether, and to what
extent, the defendant is a repeat violator," <u>Yakubets</u>, 3 F.
Supp. 3d at 291. Though perhaps warranted in other cases, the
Court finds that even the baseline triple multiplier would yield
too high an enhanced damages award in this case.

which depend on willfulness, whereas the 'right and ability to supervise' standard does not even require knowledge." <u>Cruz</u>, 2015 WL 2376290, at *5 (quoting <u>Yakubets</u>, 3. F. Supp. at 302). Here, Plaintiff has offered no evidence countering Defendant Hackett's assertions that he did not personally intercept the Program, direct his employees to intercept the Program, or have any knowledge that the Program was intercepted and broadcast on the date and time in question. Accepting as true Defendant Hackett's uncontested contention that he was not aware that the Program had been purchased or broadcast, the Court finds no basis upon which a jury could conclude that Defendant Hackett's conduct was "willful" under the enhanced damages provision.

## IV.  CONCLUSION

For the foregoing reasons, the Court will impose a judgment of $1,000.00 against Defendant All Star Sports Bar and Defendant Hackett, jointly and severally, pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). The Court will additionally impose a judgment of $500.00 against Defendant All Star Sports Bar, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). Appropriate orders follow.[4]

---

[4]     The Court will allow Plaintiff fourteen days from the date of the orders entering judgment to submit evidence and costs of attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).